The next case set for oral argument is No. 15-6003 W.M. N. Ray, Jessica Lynn Robb v. Janice Harder Good morning, counsel. Please be seated. No, not you. So you must be Mr. Baer. Yes, Your Honor. I'm Brian Baer. I represent the appellant, Jessica Robb. Good morning, Mr. Baer. You are up. Thank you. Good morning, and may it please the Court. You know what, please, the Court, before you start, maybe you were here to hear some of the argument over standing in the earlier case, and I have serious questions about the debtor's standing in this case to object to this administrative expense. How does the allowance or not, or well known, as we would say in the academic world, affect the debtors financially? This is a claim that will be paid. It's an administrative expense claim that will be paid 100% in the debtor's confirmed Chapter 13 plan. Whether it's treated as an administrative expense or just a general unsecured claim, the terms of the debtor's proposed plan call for payment of 100% of all allowed and filed claims. So this is a direct economic impact to the debtor in that she will be responsible for paying this claim through her Chapter 13 plan. In addition to the amount of the pot or out of the pot? Your Honor, I believe the confirmed plan, as I recall, calls for payment of 100% of all filed and allowed claims. If I'm mistaken about that, then the treatment of the administrative nature of the claim as it's filed will be paid 100%. For some reason, I did not make a paper copy of it, but I guess it's certainly my memory that I looked at the plan, and it was what I would call in Minnesota a pot plan. The debtors are just making monthly payments to the trustee, and then he's making a prorated distribution to creditors. I have to confess I didn't anticipate this line of questioning, but I will- Nobody expects the inquisition. Very true, Your Honor. There was an amendment of the plan, possibly even after the filing of this case, that calls for, I believe, in negotiations with the Chapter 13 trustee, we amended the plan to provide for 100% of filed and allowed claims, just because there weren't that many unsecured claims that were filed in the case. But regardless of the treatment of the unsecured, this claim purports to be an administrative expense claim, and therefore under our model plan would be paid 100%. But if it was paid 100%, then that just would mean that the unsecured creditors would get a smaller amount. It doesn't mean necessarily that your client would have to pay more if it was a pot plan. That would be true, Your Honor. The administrative expenses would be paid at the expense of the unsecured creditors. So if it turns out to be a pot plan, as I thought, then the debtors, would you agree with me, the debtor lacks standing to object to the claim? The administrative expense, excuse me. Your Honor, depending on the amount of the unsecured claims and the treatment of the other unsecured claims, then yes, I believe there could be an issue. I would concede that point. If this is just lumped in and treated just as everyone else or paid before what would otherwise be paid, then yes, I would agree with that assertion. Other than the nature of the confirmed Chapter 13 plan, I don't believe the facts in this case are very much in dispute between the parties. Janice, I'm sorry, my client, Jessica Robb, filed a Chapter 7 bankruptcy case with the U.S. Bankruptcy Court for the Western District of Missouri in March of 2014. That case was subsequently converted to a Chapter 13 case. The reason for the conversion was that following the Section 341 meeting of creditors, the Chapter 7 trustee, Janice Harder, discovered a defect in the debtor's deed of trust that made it subject to avoidance. She notified the debtor of her intention to avoid that lien, and the debtor filed her motion to convert to Chapter 13, and that motion was granted. After the case was converted to Chapter 13, the former Chapter 7 trustee at this point filed her administrative expense claim seeking compensation based on. Did she file it as a proof of claim as an administrative expense? Yes. Okay, thank you. And the terms of the claim request an hourly compensation at the rate of $150 per hour for time spent investigating, amongst other things, the defect in the deed of trust. The Chapter 7 trustee did not seek authority to employ herself as counsel for, as an attorney for the Chapter 7 trustee or any other attorney for the Chapter 7 trustee, nor did she collect or disperse any money or property to any parties in interest or creditors in the case. The debtor filed her objection to the proof of claim. There was a hearing. Following the hearing, Judge Dow issued his ruling denying the debtor's objection to the claim and allowing the claim. The debtor then timely filed her appeal in this appeal. Let me go back to the reason for the conversion. It sounds like all of this happened relatively early in the case, and your client converted to the 13. Was that in an effort to preserve the preference transfer so that the transferee would not be sued by the Chapter 7 trustee? It was motivated by her desire to keep her home. The home would be subject to liquidation. If the lien was avoided, the Chapter 7 trustee would have the right to liquidate the home. As it exceeded the Missouri homestead exemption of $15,000, the home was worth approximately $40,000. So if she had not sought to convert and pay the unsecured creditors at least as much as they would have received in the Chapter 7, then she would have faced the consequence of losing her home. So let's talk about the basis of the objection to the claim, 326, the mathematical computation that anything times zero is zero, right? Correct. Yes. That statute begins with any case under Chapter 7 or 11, right? Correct. The trustee's compensation shall be calculated as follows. We're in a 13. That is correct. How do we apply that statute since we're in a 13? Well, the basis of the Chapter 7 trustee's claim are the services that she provided and the work that she did in a Chapter 7 case while the case was a Chapter 7. So the basis of the claim is that she did work as a Chapter 7 trustee. So we believe that Section 326, since it specifically creates a scheme for compensating Chapter 7 trustees, should apply and has applied. And even in the cases cited by Ms. Harder where the courts have allowed distribution, they have looked and dealt with Section 326 in Chapter 13 cases after conversion. We believe that the statute, since it specifically discusses compensation of a Chapter 7 trustee, and this claim purports to be for services provided as a Chapter 7 trustee while the case was a Chapter 7, it would apply to create a limit on the amount of her compensation. Okay. Your Honors, the scheme for compensation, as the courts, I'm sure, are aware, starts with Section 330, allowance of compensation of professionals. Part of the Section 330 scheme allows the Chapter 7 trustee to receive what I'll refer to as a basic fee of $60 from the court filing fee. That is Section 330B. And then Section 330A deals with compensation of trustees amongst other professionals. And Section 330A specifically incorporates the terms of Section 326. As the court has mentioned, Section 326 creates a scheme whereby there is a cap on the compensation of Chapter 7 trustees. It's based on the amount of money that's disbursed to parties in interest or creditors by the Chapter 7 trustee. In this case, Ms. Harder did not disperse any money to any creditors and did not disperse any money to any parties in interest, did not disperse anything to anybody. So it is, as the court pointed out, a simple mathematic computation. The relevant portion of the statute would be the first step in the ladder. The compensation shall not exceed 25% of the first $5,000 disbursed by the trustee. Well, in this case, the trustee didn't disperse anything to anybody. So the compensation amount is capped at zero, which is really the crux of the case, I believe, is whether this scheme can, 326, can create a cap that is zero. And by its plain language, the compensation shall not exceed 25% of the first $5,000. It does. Well, it does in 95% of all Chapter 7 cases. Correct. Except the trustee gets no compensation other than her bid of the filing fee. Correct. Your Honor, that is correct. The basic $60 flat administrative claim or fee, basic fee, that they get for their administrative duties in this case, or in any case. And as the court points out, that's the vast majority of the cases. Is that compensation adequate? No. I don't think there's much debate about that amongst bankruptcy practitioners that this $60 fee is inadequate. It is a harsh result for a trustee to spend three hours of investigation and work and legal time and not be compensated for that other than a $60 flat fee. But that's the situation that Congress has created with these statutes. The courts, the opinion cited by Ms. Harder in her brief, seek to circumvent that to get to a result. Well, and interesting that you should use the term circumvent because when I read the transcript, it appears that the Chapter 13 trustee did not take a position to enforce that code provision. And the U.S. trustee specifically said, we don't, you know, think we're not taking a position and we don't ever object to these things. So if they put the burden on your client to do so, I guess I'm uncertain why they aren't, why they are circumventing their duties under the code as well. Your Honor, that might be a better question for the Chapter 13 trustee. But as far as the U.S. trustees, the U.S. trustees, as the court is aware, administers the panel trustees in Chapter 7 and I think has an interest in looking out for them. They would probably like to see Congress increase the amount that the panel trustees receive as well. But they also oversee the Chapter 13 trustees as well. Correct, correct. And back to 330, the BAP CEPA amendment to that has added a specific provision that the trustees' compensation shall be treated as a commission. That's correct, Your Honor, which I think furthers the point. There are multiple sections in 330 that specifically incorporate 326. And then there's the language that was added that says that this is a commission. Well, in a commission-based scheme, if you don't sell the house, if you don't disperse the property, if you don't have a pot of money to take a percentage of, there's no fee. Well, it looks like you're into your rebuttal time. Do you wish to reserve the rest? Absent any further questions from the court, I'll reserve the rest of my time. Thank you. Thank you. All right, Ms. Harder, appearing for yourself. Yes, Your Honor. May it please the Court? First, I'd like to just address a couple of issues that were raised. First, by Judge Kressel, the idea of whether the debtor has standing in this case. I did not raise that. It appears that in all of these cases, it's the debtor that is the one that is objecting to the Chapter 7 Trustee's fee and the cases where the debtor has converted. However, the debtor, I do not believe, will be affected whatsoever by my receiving my $450 fee, the amount paid by the debtor into the Chapter 13 plan will be the same regardless. He says, and there are several amendments, and there was an amendment. I looked at the docket. I don't have the plans, but the docket has as late as March something, a modified plan being confirmed. Do you know whether it's a pot plan or a pay-in-full plan? Well, I believe it's a pot plan. It's paying the amount in that would be paid for this asset. Is there a provision that requires payment of 100% to unsecured creditors, as suggested at least? Nobody really knows. I don't know for sure. Well, it might depend on how many claims were filed. Right, and I think it's the student loan claims that may be the only one that's been filed. I think that's $28,000. We're really going outside the record now. Right, but regardless, I don't think whether it's a pot plan or a 100% plan, I don't think that the debtor is going to pay less if I'm not paid my $450. I think it's going to come out of whatever. And once it's a pot plan, if the claims aren't enough for the whole amount that's going to be paid, it becomes a 100% plan. But if the plan itself, as we don't know but it's suggested, says that debtors will pay 100% to unsecured creditors, your claim would dick into that. They'd have to pay an extra $400 to pay your claim and then pay the general unsecured creditors 100% of their claims. If your claim is knocked out, there are $400 ahead. Okay, well, my understanding is the debtor can't be ordered to pay 100%. If the amount of the pot is large enough that the claims that are filed are less than that pot, it becomes a 100% plan, including my debt. Well, there's nothing to prevent a debtor from providing in this plan. Well, our plan is to pay 100% to creditors. True, yes. Which I think is what I heard was their plan. Okay, right. Well, we don't know, so let's move on. Well, that's true. All right. And the second issue I wanted to address was Judge Saladino's question regarding 326A, which does say that it applies to a case under Chapter 7 or 12. Oh, 12. Anyway, but not 13. And I saw some cases that just deal with that. There aren't too many, but that is a good point because if that's the case, then 326A does not apply in this case, but 330 still could apply because it does say a trustee can be. But you're not the trustee. I mean, if we're really going to get technical on those lines, when you filed your administrative expense, you were not a trustee. No, I'm a former trustee. That's true. And there's nothing in the code about compensating former trustees. Okay. So, anyway, but I did want to address that. But my main point is the two points that I think Judge Dow did decide this case on, number one, which is there is nothing in the statutes that prevents the Chapter 7 trustee from being paid in a situation like this. Even the language of the statute itself, 330 and then, which is modified by 326, as Judge Dow said, it's very arguable and he does not agree with the cases that say otherwise, that the plain meaning of the statute doesn't get us to the situation where the Chapter 7 trustee can be paid. He says it's not entirely clear, as some of the courts have said, that Section 326A was intended to apply to anything other than fully administered cases. And I think you can read that statute. First of all, you read the part that says the court may allow reasonable compensation for the services provided by the trustee after the services have been provided. Then it goes on and limits it to a certain amount of money that's been paid. But it doesn't say that is the only situation. What I think that statute says is the trustee can be paid a reasonable amount and if money is paid out, it is a commission, which has been added to another statute, which is paid based on a percentage. I think that can be argued that way. One of the problems with that is it just says too much. Leave aside the conversion. It's just a Chapter 7 case. And you spend a lot of time. And you said, you know what, I'm not going the 330 route and the 326 route. I'm just going to apply because I'm not limited to that, Judge Dow says. I'm going to file and ask for lots more. Because Judge Dow says that's not the only way for trustees to get paid. I'm going to ask for more than the 330 and the 326 allows me. Wouldn't that follow if that's true, if there's no prohibition against it? Well, in my opinion, Judge Dow is saying you'd still go on 330 and 326. It's just that 326 provides for a reasonable amount. So I don't think any judge is going to allow anything that's unreasonable. So they can't exceed the percentage, you're saying, but they can reduce it? I mean, is anything above the percentage in the statute per se unreasonable since it modifies? Yeah, if no funds are distributed, in my opinion, it's a reasonable amount. If the reasonable amount is more than that, I guess it's a reasonable amount. But I don't think in most situations a reasonable amount is going to be. It's usually going to be a quantum merit situation where you go by the actual value of the services provided. So you're thinking it's just a straight Chapter 7 case? You could apply for compensation on a quantum merit basis? Oh, you're talking about where they're – oh, it's a non-asset case? Well, not much point in asking for compensation in a non-asset case. I'm assuming there are assets. But you want to ask for more. You want a quantum merit amount. No. The cap does not adequately compensate me. Judge Dow says that's not the only way to get compensated, so I'm going to ask for more. Well, I think Judge Dow is saying in a fully administered case, you do go by the commission that set out the percentages, and that would be the cap in a fully administered case, which is a case where there is an asset. He said that, but that doesn't appear in the bankruptcy code anywhere, does it? That's the way he's interpreting 326A. He said it. Well, I know. I'm just saying that's his argument, and I agree with his argument. True. And I think that's – he was interpreting Section 326A, and I would agree with that interpretation. And I think that's an interpretation that other courts have also agreed with. But the other – Well, apparently neither one of you is familiar with the Minnesota case of Henry Fisher from 1997. Nobody cited it. It was cited. Very disappointing, was it? Yes. It was cited. And that was a bankruptcy – was that a bankruptcy appellate case? No, that's Bob's case. It was a bankruptcy court case. Okay. I'm not remembering it either, so – but I would also point out the public policy argument that I also wanted to make that I think Judge Dow also made, as did the United States trustee in the case, because we want to encourage trustees to pursue whatever assets there are. This is a valuable asset, but for my efforts in realizing that there was a defect in this mortgage and that deed of trust, which could be set aside, which I don't think anyone is disputing, but for that, the creditors would receive nothing in this case. And I think we want to encourage trustees to pursue assets and take whatever steps they can to see if there are assets to pay the unsecured creditors in the case, which I think is one of the main jobs of a Chapter 7 trustee. So that is my argument, that based upon the wording of the statute, it does not in any specific way prohibit a trustee, a Chapter 7 trustee, from being paid when the case converts to a Chapter 13, and also the public policy argument that encourages trustees to pursue assets. I'm asking that this court uphold the Chapter 7 bankruptcy judge's order and allow my proof of claim in the bankruptcy. If there are no further questions. Thank you, Ms. Harder. Okay, thank you. Mr. Bair, you've got two and a half minutes. Thank you. The cases cited by the trustee allowing compensation, they for the most part seem to be result driven. They're trying to reach a goal of what they believe to be a fair and equitable result. And they seek that outside the statutory confines of the bankruptcy code, unfortunately. Section 330 and Section 326 do apply to this case. The trustees' position seems to be that, well, the statute doesn't say I can't do this. Well, actually it does. Section 326 says the compensation for a Chapter 7 trustee  $450 exceeds 25% of zero. And that is why we believe that the court erred in making its ruling. The reference or the statutory justification, although Section 105 is not mentioned anywhere by the trustee in her brief or raised to the extent that there is some overarching equitable power in the court, it would be found under Section 105. Well, the Supreme Court last year in Law v. Siegel told us that Section 105 cannot be used to trump other statutory provisions. In this case, basically what the trustee is asking the court to do is allow Section 105 to trump Section 330 and Section 326. By relying on some common law or extra statutory authority to seek this claim or to file this claim, the only power the court would have to do that would be under 105. And the U.S. Supreme Court has made it very clear that that's not to be allowed as an end run around other statutory provisions. I'm running low on time. One last issue. To the extent that it is an issue, I'd ask the court to take judicial notice of all the Chapter 13 plans, original and amendments that were filed in this case, absent any objection from the trustee. Thank you. Thank you. Please recess. The court will be in recess until further notice. Okay.  Did they talk about it? Yes, ma'am. They did. Okay. Did they have dinner? After dinner. Okay. Did she do this before? Yeah. I heard you calling me. Oh, yeah. Yes, she did. Who was it that was? I know. Well, I had it all set up. My daughter had gymnastics, and she was going to have a friend bring her home, and then a friend picked her. Yeah, that's right. So then I would pick her up, and, you know, it's like, okay, fine. But she gets her license next week. So I won't be a chauffeur anymore? That is great news. That is huge. Oh, my goodness. Yeah. Yeah. Yeah. Yeah. Yeah. Can you believe she's been here two years, she said? You have? And I've never met her. We never met you. Oh yeah, this is the first time I've ever met her. Okay. Yeah. You're not good. Well, I hope you come to us. Yeah. Okay. Now, are you permanent now? No. So, I've been a term here. But I accepted when my sister left in short notice, so I finished the business membership. Oh, okay. And then they gave me two years. Yeah, so I moved on in June of 2016. Okay, so you've been here a while. Yeah. And who knows what it is now? Maybe it's still going to be around after that. Right. Maybe this last time. Do you know what this poem is on? Yeah. I think it was a book really popular in your years. Okay. It just started. It just started. It's a July poem. Okay. So, at least it's a little bit old. Yeah. Let's see. Well, how long have you been teaching here? So, this is my second term. Oh, really? Yeah, so I cleared for him for one year after law school. And I was like, I'm just right here. And then I had to catch this. And this is in the lobby? Yes. And he just got here. Yeah. He's not going anywhere, is he? Oh, my God. He's not going anywhere. I made sure he's happy. That's right. That's right. And I just joined us a few months ago. Yeah. That's great. So, how are you funding it all? Oh, good. It's great. Okay. Except my dad. I don't think I love him. I bet. He's changing his attire. Oh, my goodness. And do you keep up among the sports? I was going to say, because he always seems to want people to talk sports to him. But you're a baseball player. Yeah, I mean, yeah. Enough that he can talk with you in your attire. He's a big sports fan. Oh, okay. Oh, okay. Well, wait. When's he leaving? He's going to be back. I mean, he just got here. He's going to be back. He's going to be back. Well, when are they going to get him? I'm confused. They were going to come just a little bit back. He's going to be back. Oh, I thought to talk to him a little bit. Oh, yeah. Oh, yeah. Okay. Just to have some changes. Well, I think they're going to be in a little bit of a rush. Yes, I think they're going to be back. Okay. He doesn't want me to talk to him. He doesn't want me to talk to him. Do you know if he'll travel with you? I don't. I travel with him to the table. But I don't travel with him. He travels with me. It's just that I don't want him to get sick. Yeah. I mean, that makes it a little bit difficult. Yeah. Okay. Not everyone's on schedule. Yeah. The first time I met him, he was walking down the street. He was walking. He was walking. He was walking. It was fine. I didn't care. But he only went to Miami once a month. Oh, right. Is it the same test in Miami? I don't know. I know. Really? It was great. But when I met him, it was hard enough. Yeah. I had a one-year-old and a three-year-old. Right. It was so funny because we didn't keep good leave. And then we were all playing hide and seek. Yes. And then the prior law clerk said, but she pretty much said, I don't need to go. Yeah. She said that. She did say that. Yeah. But what did he actually do? Right. Right. He said, well, we've already got her standing around. Yeah. Okay. It's so funny because I miss that. I miss that. I miss that. I miss that. I miss that. I miss those crackers. I miss those crackers. I miss those crackers. I miss those crackers. I miss those crackers. I miss those crackers.       It's so funny to me because we had a lot of fun and we had a lot of fun. Oh, yeah. Because now it's boring. Right. And the kids, it was fun. Yeah. Yeah. Do either of you have any kids? No, no. Okay. Okay. Did you come straight from Los Angeles? No. I actually came from Georgia. Oh, okay. How could you? Oh, he's so nice to work with. Oh, yeah. He's fabulous. I know. I love it. I am so proud of him. Yeah. It was fun. It was fun. Yeah. Yeah.  Yeah. We did a lot of stuff together. Yeah. The nicest bed I've ever built together. It was a joke. All of those jokes. We actually did the best job ever. Yeah. Why do you think I bet? I know. It's not funny. Oh. Did you think about that? We had it where it had something here that was screened. It's usually fuzzy. Oh, I see. Or there's that second delay when somebody talks and another person hears them. Oh, yeah. But this is all new equipment they've got. It's got a view. It makes it happy.  And one of the things that I love about this is that it's a lot of fun. I mean, I was just shuffling these papers. I know. I know. I was like you're definitely going to get this one out. And just when he had it, I don't know. He says he said, I'm just thinking if he gets them all to the closet, I'm struggling. I know. No, he should start. He was wrong. I would have said slap. You know what? I don't know when you're going to start. I would have said slap. I think you're right. I would have said slap. Yeah, definitely. I would have been like, take as long as you'd like. And I figured the judge would see it. They'll give him more time to think about what he's doing. Not my problem. Not at all. He knew. I mean, they see the clock. They can hear it. The judges. No, the. Yes. Yes. We have a camera over there pointed at the clock. So they have a split screen. Ah. And the red is on one half, and the clock, it lights on the other. Well, we did this up in St. Paul a couple months ago. And we couldn't. We didn't have the second. Ah. So the judge just had to tell them, OK, your yellow light's on. But that's part of what you start to relate to. Yeah. Yeah. Because you think it's in five minutes, and all of a sudden. Yeah. Because the time flies when you're up there. And it broke sort of their stream when the judge had to say, excuse me, but your yellow light's on. Yeah. So I was glad Jim was able to fix this up, too. Yeah. Yeah. I wasn't expecting to see that. Yeah. I didn't know he was going to do that, either. But apparently, now all of the circuit court rooms are going to be set up with that equipment. So St. Paul, here, and the City Hall. So nobody can do this. Those are only the second or something. Just about. I mean, they're trying to cut costs. So we're making more turns into us instead of into them. I like that. Because it's easier to travel. Right. It's much easier to travel. Yeah. I know we've had some cases out of Fargo, but it's always just one case. So you can do the New York-Fargo Fair. I mean, actually, we have two or three cases that go up there. Let me just say, these ones are so small. It's nuts. It's nuts. Yeah. Mine says, like, in March, it was snowing. And that March was the summer. Is that one? You can only find one. So does that mean when we get stuck, our plane is in St. Paul? Maybe that was in St. Paul. That was when we ate. The first time we ordered, right? Years ago. Yes. That was. So you just, yeah. Hello. Hi. Just the person I was looking for. Actually, you two. Okay. You guys can come back now. Okay. Emily, I think I'm going to have lunch with Judge Schirmer. Yes, yes. By the way, this is Brian Elgar, our new law clerk. Well, come on back. Follow him. Judge Schirmer had told me that you were Judge Kressel. Yeah, but I think Judge Kressel is trying to get on an earlier flight. Oh, I see. Okay. Yeah, go ahead and come on back. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Cindy? Oh, yes. We're going to take off. We got on the flight. Did you get an earlier one? Okay, great. So we're going to catch that cab. Oh, okay. Yeah. Oh, okay. Thank you again. Great. Okay. And everybody knows how to get out of here. Just right through the store right here. Take the elevator? Yeah. Okay. Bye-bye. Bye-bye. Have a good day.       Thank you. Have a good day.  Bye-bye. Have a good day. Bye-bye.  Have a good day.   Bye-bye. Have a good day.  Bye-bye. Have a good day. Bye-bye. Have a good day. Have a good day. Have a good day. Have a good day.